UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PABLITO VEGA,

        Plaintiff,

                                    Case No. 23-cv-1357-pp

    v.

COMMUNITY DEVELOPMENT FINANCIAL
INSTITUTION LOCAL INITIATIVES SUPPORT
CORPORATION MILWAUKEE OFFICE
and COMMUNITY DEVELOPMENT FINANCIAL
INSTITUTION MILWAUKEE ECONOMIC
DEVELOPMENT CORPORATION,

        Defendants.

---

**ORDER GRANTING DEFENDANT MILWAUKEE ECONOMIC DEVELOPMENT
CORPORATION'S MOTION TO DISMISS (DKT. NO. 4), GRANTING
DEFENDANT LOCAL INITIATIVES SUPPORT CORPORATION'S MOTION TO
DISMISS AND MOTION TO QUASH SUBPOENA (DKT. NO 20), CONSTRUING
PLAINTIFF'S MOTION TO DENY MOTION TO DISMISS AS OPPOSITION
BRIEF (DKT. NO. 26), DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION (DKT. NO. 12) AND DENYING PLAINTIFF'S MOTION
FOR ENTRY OF ORDER OF DEFAULT JUDGMENT (DKT. NO. 31)**

---

On October 12, 2023, the plaintiff, who is representing himself, filed a

complaint alleging that the defendants had denied Vega Global Advisors access

to credit in violation of the Equal Credit Opportunity Act, 15 U.S.C. §1691 *et*

*seq.* Dkt. No. 1. Two months later, defendant Community Development

Financial Institution Milwaukee Economic Development Corporation ("MEDC")

filed a motion to dismiss the complaint for failure to state a claim for relief.

Dkt. No. 4. A week later, on December 21, 2023, the plaintiff moved for default

judgment against defendant Community Development Financial Institution

Local Initiatives Support Corporation Milwaukee Office ("LISC"), dkt. no. 7; the court denied that motion because the plaintiff had not provided proof that he'd served the defendant, dkt. no. 10. The plaintiff then asked the court to reconsider that order. Dkt. No. 12. On January 10, 2024, the plaintiff filed with the court a subpoena addressed to MEDC's president, dkt. no. 17, and a subpoena addressed to the executive director of LISC, dkt. no. 18. On January 11, 2024, LISC appeared, dkt. no. 19, and filed a combined motion to dismiss the complaint for insufficient service of process and to quash the subpoena due to lack of personal jurisdiction, dkt. no. 20. The plaintiff filed a motion asking the court to deny LISC's motion to dismiss, dkt. no. 26, and a second motion for default judgment against LISC, dkt. no. 31.

The court will grant the defendants' motions to dismiss the complaint, construe the plaintiff's "motion to deny motion to dismiss" as a brief in opposition to that motion, deny the plaintiff's other outstanding motions and dismiss the case without prejudice.

## I. Background

### A. The Allegations in the Complaint (Dkt. No. 1)

The October 12, 2023 complaint alleges that the State of Wisconsin received "$2.5 billion in ARPA [American Rescue Plan Act] economic assistance" in March 2021 to assist small businesses (such as Vega Global Advisors) recovering from the COVID-19 pandemic. Dkt. No. 1 at 2. The plaintiff alleges that $42 million of that ARPA distribution was earmarked by the state of Wisconsin for "grants and forgivable loans" for small businesses. Id. According

2

to the plaintiff, these funds would be managed by "Community Development Financial Institutions" that must follow certain criteria for awarding grants. Id. The complaint quotes from the State of Wisconsin Department of Administration's website regarding its "Diverse Business Investment Program;" the web site explains that the purpose of the program is to "provide funding to Community Development Financial Institutions to support grants and forgivable loans to small businesses in qualified census tracts or areas disproportionately impacted by the COVID-19 pandemic." Id. at 3 (quoting from https://doa.wi.gov/pages/DiverseBusinessInvestment.aspx).[1] The complaint asserts that these "Community Development Financial Institutions" would manage the funds, but that they were not authorized to keep any for themselves or to "exclude businesses they did not find a liking to or add any new criteria . . . ." Id. at 2. The complaint avers that two of these "Community Development Financial Institutions" were defendants LISC and MEDC, and that the defendants received a combined $8.3 million in grant funding to distribute under the program. Id. at 3.

The complaint alleges that during a video call on September 30, 2022, Vega Global Advisors "was denied credit by being denied access to a grant and a forgivable loan by LISC . . . ." Id. It alleges that on that date, the plaintiff had a video call with Matt Melendes.[2] Id. The complaint states that Melendes

---

[1] It appears that some of page 2 of the complaint is missing; the last partial paragraph seems to have been cut off on the left-hand side and the last full line on the page ends mid-sentence. Dkt. No. 1 at 2.
[2] The complaint does not explain who Matt Melendes is or what role he plays at LISC.

3

"denied" that LISC "did not function as a traditional financial lender" and that Melenedes "indicated that LISC only provided construction loans to prospective borrowers for the purpose to revitalize portions of Walkers Point that had undergone decades of neglect." Id. The complaint says that LISC

> would not take any risk to provide any type of loan to a small business that did not report satisfiable revenue numbers from 2020 to 2022 during the COVID-19 Pandemic because LISC would not have any measure to gauge the ability of the small business to retire the loan in question within a timely period thus exposing LISC at risk of not being the potential beneficiary of any future allocation from the State of Wisconsin.

Id. According to the complaint, "Vega Global Advisors" told Melendes that the purpose of the "financial assistance being requested from LISC would be to revitalize a shuttered property somewhere within 53204 as either a rented space or as an outright acquisition to upgrade the IT Systems components of the small business so to allow Vega Global Advisors to function at full strength in the private sector." Id. The complaint maintains that during the conversation, Melendes never acknowledged that LISC had received $3.3 million from the state of Wisconsin to assist small businesses via a grant or a forgivable loan; the complaint accuses Melendes of keeping that information "secret" and instead telling Vega Global Advisors to talk to a venture capitalist. Id. The complaint avers that "[i]n reaching this decision LISC violated Vega Global Advisors right to access a credit source because the income in question was affected by the COVID-19 Pandemic which was based on income that derived from part-time employment, or a 401K, or revenue held in reserve." Id.

The complaint goes on to allege that on October 27, 2022—about a

4

month after the video call with Melendes—someone who identified herself only as "Beth" answered the phone and refused to "connect the call" to a loan officer, despite being asked to do so two times. Id. at 3-4. It alleges that after the call was "lost and re-dialed," someone named Diane answered but refused to connect the call to a loan officer or to Beth, "claiming Beth was on another call." Id. at 4. The complaint alleges that neither Beth nor Diane were employed as loan officers at MEDC; it questions why they were allowed to answer phones and not connect callers with loan officers. Id. It avers that Beth "repeatedly" denied that the MEDC had "any grants or forgivable loans on hand derived from the State of Wisconsin to provide to small businesses affected by the COVID-19 Pandemic for any purpose including revitalizing a shuttered property anywhere throughout Milwaukee." Id. The complaint alleges that Beth never acknowledged that MEDC had gotten $5 million from the state to provide such grants or loans. Id. It states, "Again the same pattern of criminal behaviour as LISC, she kept that information secret and refused to disclose it to Pablito Vega." Id. The complaint states that as a result of this conduct, "Pablito Vega was obviously denied credit," and that he was "the subject in effect of a criminal fraudulent act that one more time violated Vega Global Advisors right to access a credit source . . . ." Id.

The complaint alleges that the Award Agreement between the state of Wisconsin and LISC (which the plaintiff did not attach to his complaint) does not authorize LISC to add new criteria or conditions "to negate the providing either a grant or a forgivable loan to a qualified business that meets all prior

5

criteria and qualifications to be granted the grant or forgivable loan." Id. It avers that LISC "cannot convert a lump sum awarded to LISC by not allowing to disburse any grants or forgivable loans to qualified small businesses that meet the criteria for disbursement under the Award Agreement," and that LISC can't just do whatever it wants with the lump sum "by restricting the resource to only small businesses that will use the loan for construction purposes only in 53201." Id. The complaint makes the same allegation regarding MEDC, and asserts that MEDC cannot restrict grant funds to "only small businesses that do not have a proper financial relationship with their primary lender for one reason or another." Id.

For relief, the plaintiff (Pablito Vega) asks the court to "order both entities to release to him a grant in the amount of $200,000 each" in compensatory damages "for the fraudulent acts committed against him" and another $200,000 each in punitive damages. Id. at 5.

B.    MEDC's Motion to Dismiss (Dkt. No. 4)

Two months after the plaintiff filed the complaint, MEDC moved to dismiss it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 4. MEDC argues that the plaintiff is not an "applicant" under the Equal Credit Opportunity Act (ECOA); that even if he was, the actions described in the complaint do not constitute discrimination under the ECOA; and that the Diverse Business Initiative Grant program was "expressly authorized by law" for a specific class of persons, and because any denials described in the complaint would have been made under that program,

6

MEDC's actions "are not discriminatory as a matter of law." Dkt. No. 5 at 4. First, MEDC argues that the plaintiff is not an applicant as defined by the ECOA because he did not allege that he asked for an extension of credit from MEDC that was denied due his membership in a protected class and did not formally submit a grant application to MEDC. Id. at 5-6. According to MEDC, Vega's phone calls to MEDC were merely the plaintiff seeking "information." Id.

Next, MEDC argues that the plaintiff did not sufficiently allege that he is a member of a protected class or that others outside his protected class were treated more favorably. Id. at 7. While acknowledging that the plaintiff argued that MEDC discriminated against him due to the source of his income, MEDC contends that the plaintiff "did not plead facts to establish that the MEDC employees had any knowledge of where his income was derived from; only that they told him they were not in possession of grants or forgivable loans."[3] Id.

Finally, MEDC argues that even if the plaintiff had applied for credit and been denied, the denial would not have been discriminatory because under the ECOA, it is not a violation of the statute "for a creditor to refuse to extend credit offered pursuant to certain credit assistance programs if such refusal is

---

[3] MEDC further argues that its employees' statements were accurate, because MEDC did not receive guidance from the state of Wisconsin on administering the Diverse Business Initiative grant program until after the plaintiff's call. Id. at 2, 7. However, this statement relies on a declaration from David Latona, President of MEDC. Id. at 2 (citing Dkt. No. 6 at ¶5). The court may not consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim without converting the motion to a motion for summary judgment. Beam v. IPCO Corp., 838 F.2d 242, 244 (7th Cir.1988). The court will not convert the motion and has not considered Latona's declaration.

7

required by, or made pursuant to, such program." Id. at 8. It recounts that under 15 U.S.C. §1691(c)(1), a creditor is not prohibited from refusing to extend credit offered under a program "expressly authorized by law for an economically disadvantaged class of persons." Id. MEDC argues that the Diverse Business Initiative grant program was "passed to help an economically disadvantaged class of businesses" and that the plaintiff did not fit into that class. Id. MEDC explains that the grant program required that eligible businesses use the grant funds for particular purposes only, such as "restocking inventory (no alcohol), PPE for employees or customers, physical modifications of space to align with COVID guidance, cost of rent or principal/interest for building mortgage, utilities, and payroll." Id. at 8–9. It recounts that the plaintiff's stated purpose of "[r]evitalizing a shuttered property" is not one of the permissible purposes. Id. at 9. MEDC also contends that the deadline to apply for the Diverse Business Initiative grants had passed at the time the plaintiff called. Id. MEDC argues that this means any denial of credit under the Diverse Business Initiative program was not discriminatory. Id.

The plaintiff opposes MEDC's motion. Dkt. No. 9. The brief is repetitive, wordy (seventeen pages of single-spaced text), primarily composed of copied quotes from various cases and it references both defendants' actions even though LISC did not join MEDC's motion to dismiss. The plaintiff argues that he was "obviously" both a prospective and an actual applicant "because he requested access to this credit that he was denied to by being told a falsehood

8

that both organizations did not have on hand" any grant funds. Id. at 1. He asserts that he was "obviously discouraged" from pursuing grant funds further by MEDC's "devious actions in refusing to admit that they in fact had on hand $8.3 million dollars allocated to them by the State of Wisconsin Department of Administration in April 2022 because he had no entitlement to them under any standard." Id. The plaintiff argues that Vega Global Advisors was eligible for grant funds because it met all the qualifications for receiving a grant under "the language used by the State of Wisconsin Department of Administration" and the language of the Award Agreement (which, again, he did not attach to the complaint as an exhibit), because it was a small business located in census tracts 53202 and 53204. Id. at 2. The plaintiff argues that in refusing to connect "the call to a authorized loan officer who was actually authorized to make a credit decision on a credit application under the special purpose credit program established by the ARPA," Beth and Diane "discourage[d] prospective applicants from applying for credit" . . . "via a falsehood that MEDC did not have on hand any grants or forgivable loans to assist that small business to recover from the COVID-19 Pandemic." Id. at 4.

The plaintiff contends that he is a member of a protected class under the ECOA because he is "a qualified small business in census tracts within 53202 and 53204" and that he was "qualified" for the grant he requested, but that the lender declined his application and "showed a preference for a non-protected individual." Id. at 5. (The plaintiff does not identify this non-protected individual.) The plaintiff maintains that Beth and Diane were "illegally acting as

9

an assignee" for MEDC by playing with phones and discouraging prospective applicants. Id. at 6–7. Although LISC did not join the motion to dismiss, the plaintiff argues that Matt Melendes also was illegally acting as an assignee. Id. at 7. The remainder of the plaintiff's brief repeats these arguments interspersed with case law (although it is not clear how some of the cases relate to the plaintiff's allegations). See id. at 7–17.[4]

The penultimate page of the brief appears to make a (premature) discovery demand for the "names and identities of the small businesses in Wisconsin that were awarded a sum of some sort from the $8.3 million allocated to MEDC & LISC along with the dollar amount since April 2022." Id. at 16. The plaintiff asserts that if the defendants do not provide this information, he will subpoena the records "for the edification of the court." Id.

In its reply brief, MEDC argues that the plaintiff improperly introduced facts in his opposition brief that are inconsistent with the facts alleged in the complaint. Dkt. No. 15 at 3. According to MEDC, these allegations include the plaintiff's assertions that the MEDC employees were "illegally acting as an assignee of MEDC," that MEDC had declined the loan and shown a preference for a non-protected individual, that MEDC had declined the plaintiff's loan on the spot because its employees did not believe that the plaintiff was affiliated with a private startup and that MEDC prevented him from accessing a loan application. Id. at 4 (quoting Dkt. No. 9 at 4–5). MEDC argues that rather than

_____

[4] As with the complaint, the tops of some pages of the plaintiff's brief have been cut off; it appears as if the pages are copies that resulted from the originals not being properly centered.

considering these additional facts, the court should dismiss the complaint based solely on the facts alleged in the complaint and the applicable law. Id.

MEDC reiterates that the plaintiff does not meet the ECOA's definition of an "applicant" because did not apply for credit, but merely sought information. Id. at 4-5. MEDC also argues that the plaintiff did not allege he was part of a protected class because "qualified small business" is not a protected class under the ECOA and because the plaintiff has not alleged facts supporting his conclusory allegation that he was discriminated against. Id. at 5. MEDC argues that the plaintiff did not properly respond to these and other arguments raised in its motion to dismiss, and maintains that the plaintiff waived any arguments against those points. Id. at 6.

On January 24, 2024—without seeking or obtaining leave of court—the plaintiff filed a sur-reply, which he titled "Petitioner Vega's Response to MEDCs 4 JAN 2024 Reply Brief." Dkt. No. 25. This court's Civil Local Rules 7(a)-(c) contemplate only a motion, a response and a reply; they do not contemplate or authorize the non-moving party to file a sur-reply. Civil L.R. 7(i) requires that any brief not authorized by the Federal Rules of Civil Procedure, the Local Rules or a court order "must be filed as an attachment to a motion requesting leave to file it"). The plaintiff did not file a motion asking the court for permission to file a sur-reply and did not attach the sur-reply to that motion. Even if he had, "'[s]ur-replies generally are disfavored,'" and "[c]ourts grant leave to file them 'only rarely.'" Burlingham v. U.S. Dep't of Health and Human Serv's, Case No. 22-cv-1134, 2023 WL 6390798, at *4 (E.D. Wis. Sept. 30,

2023) (quoting <u>Gomez v. V. Marchese & Co.</u>, Case No. 20-cv-1802, 2023 WL 4059090, at *8 (E.D. Wis. June 19, 2023) and <u>Groshek v. Time Warner Cable, Inc.</u>, Case No. 15-cv-157, 2016 WL 4203506, at *4 (E.D. Wis. Aug. 9, 2016), *aff'd* 865 F.3d 884 (7th Cir. 2017)). The court has not considered the arguments in the sur-reply.

C.     <u>The Plaintiff's Motion for Re-Consideration for Default Judgment (Dkt. No. 12)</u>

On December 21, 2023—just over two weeks after MEDC filed its motion to dismiss but before the motion was fully briefed—the plaintiff filed a motion for default judgment against LISC (which, as of that date, had not appeared or responded to the October 12, 2023 complaint). Dkt. No. 7. The court denied that motion, finding that "the plaintiff ha[d] not provided an executed waiver of service for LISC or otherwise shown proof of service." Dkt. No. 10. Six days later, the plaintiff filed a motion asking the court to reconsider that order. Dkt. No. 12. The plaintiff contends that a receipt shows that the complaint and a waiver of service form were served on LISC via US mail on October 20, 2023. <u>Id.</u> at 1. He calculates that LISC's answer was due on or before December 19, 2023. <u>Id.</u> He asserts that as of that date, LISC had "refused to respond." <u>Id.</u> The plaintiff argues that "LISC is being deceptive and corrupt by refusing to acknowledge receipt" of the complaint and waiver form. <u>Id.</u> The plaintiff argues that MEDC executed a waiver of service and appeared without challenging service of process; he alleges that LISC "has refused to acknowledge the jurisdiction of the Court." <u>Id.</u> at 1–2.

12

The plaintiff attached to the motion a proof of delivery form dated December 22, 2023 from the U.S. Postal Service, showing that an item with tracking number 7022 1670 0003 1200 was delivered USPS Certified First-Class Mail to 234 W FLORIDA ST STE 204, Milwaukee, WI 53204. Id. at 3. The form shows that someone signed for the package on December 21, 2023, but the name is illegible. Id. The plaintiff also provided a receipt from the Postal Service, showing that on October 20, 2023, he mailed two large envelopes first class; the estimated delivery date was October 23, 2023. Id. at 5.

D.     LISC's Motion to Dismiss and Motion to Quash (Dkt. No. 20)

As discussed earlier, on January 10, 2024, the plaintiff filed with the court a copy of a subpoena directed to the executive director of LISC's Milwaukee Office. Dkt. No. 18. The subpoena bears the case number for this case. The box next to "*Production*" is checked; the subpoena states, "**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material." The subpoena describes the "material" sought as "Large Yellow Envelope Posted Marked on 20 OCT 2023 containing LISC Date STamped Received on face of envelope on any day of 23, 24, 25, 26, or 27 mailed from Pablito Vega, 1314 South First Street, LOBBY SUITE, Milwuakee [sic] WI 53204 to Office of Legal Counsel, LISC Milwaukee Office, 234 WEST FLORIDA STREET, SUITE 204, MILWAUKEE WI 53204. Along with any other materials within such large yellow envelope also date stamp receieved [sic] by LISC." Id. The subpoena directed that that

13

envelope be produced to the undersigned on January 12, 2024 at 10:00 CST; it was dated January 3, 2024.

Counsel for LISC filed a notice of appearance on January 11, 2024—the day after the plaintiff filed the subpoena with the court. Dkt. No. 19. That same day, LISC filed a combined motion to dismiss, motion to quash the plaintiff's subpoena and opposition to the plaintiff's motion for reconsideration of default judgment against LISC. Dkt. No. 20. LISC moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Dkt. No. 21 at 3. It argues that it never was served with a copy of the summons and complaint and that it did not waive service. Id. at 2. It points out that the plaintiff has not filed proof of service on LISC or asked the court for additional time to complete service. Id. LISC argues that because more than ninety days have passed between the date on which the plaintiff filed the complaint and the date LISC filed its motion to dismiss, Fed. R. Civ. P. 4(m) authorizes the court to dismiss the case or order that service be made in a specified time. Id. at 3 (quoting Fed. R. Civ. P. 4(m)).

LISC contends that the plaintiff has not shown that he made "any attempt to properly serve LISC with the summons and complaint" because mailing a request for waiver of service is not proper service under the federal rules. Id. at 3–4. It asserts that Fed. R. Civ. P. 4(h) requires "personal service or delivery to an officer or agent of the corporation and mailing when serving a corporate defendant if service is made on an agent." Id. at 3 (citing Fed. R. Civ. P. 4(h)(1)(A), (B)). LISC maintains that the plaintiff cannot effectuate proper

service by mailing a request for waiver of service because the laws of both Wisconsin and New York (where LISC is headquartered) require that a summons and complaint be personally served. Id. at 4 (citing Wis. Stat. §801.11(5) and NY CPLR §311). LISC observes that in its text-only order denying the plaintiff's motion for default judgment, the court alerted the plaintiff to the fact that he had not filed proof of service. Id. (citing Dkt. No. 10). It points out that rather than trying to effectuate proper service under the federal rules, the plaintiff filed a motion asking the court to reconsider its denial of his motion for default judgment. Id. (citing Dkt. No. 12). LISC urges the court to deny the plaintiff's motion to reconsider because he has not properly served LISC. Id. LISC further argues that the court should not give the plaintiff additional time to effectuate proper service because he has "already had ample time to attempt service." Id.

LISC also asks the court to quash the plaintiff's subpoena due to improper service and because compliance would be unduly burdensome. Id. at 4–6. LISC argues that the plaintiff has not shown that the subpoena was properly served by mail, and that even if he had, the lack of proper service of the summons and complaint means that the court lacks personal jurisdiction over LISC. Id. at 5. LISC also argues that the subpoena is unduly burdensome because it demands that LISC appear in person before the undersigned with only four days' notice. Id. at 6. LISC argues that the subpoena seeks irrelevant information in the form of the envelope containing the waiver of service form the plaintiff mailed to LISC. Id. It contends that even if the plaintiff were to

obtain the envelope he seeks in the subpoena, the court would not have personal jurisdiction over LISC because the plaintiff did not properly serve the summons and complaint. Id.

The plaintiff did not file a brief in opposition to LISC's motion. Instead, he filed "Petitioner Vega's Motion to Deny LISCs 11 JAN 2024 Motion to Dismiss & Motion to Quash Subpoena." Dkt. No. 26. Although it is captioned as a motion, this document appears to be the plaintiff's response to LISC's motion. Several pages of the document are comprised of black boxes with unintelligible white markings that the court assumes are supposed to be text. See id. at 3–4, 5, 6–7, 8–13, 14–17. "[D]ocuments filed with the court and served on opposing parties must be legible." McBride v. Frank, Case No. 05-C-1058, 2008 WL 4282590, at *2 (E.D. Wis. Sept. 17, 2008); Hammer v. Hamilton, Case No. 19-C-216, 2020 WL 93943, at *4 (E.D. Wis. Jan. 8, 2020) (denying motion where the movant's brief was illegible). The court can consider only the portions of the plaintiff's brief that are legible.

The opposition brief repeats the plaintiff's arguments from his original default judgment motion, claiming that LISC was properly served via first-class mail on or about October 23, 2023. Dkt. No. 26 at 1. The plaintiff contends that LISC is "wrong" to cite Rule 12(b)(5) when arguing that the court does not have personal jurisdiction over LISC; he asserts that Fed. R. Civ. P. 12(b)(2) "codifie[s]" lack of personal jurisdiction. Id. And he says that LISC cannot claim it was not served because it "was served with process on 20 October 2023 via the USPS." Id.

16

The plaintiff says that the reason he sent a waiver of service form instead of a summons was "to reduce an expense of servicing the Summons via a Process Server which is the whole point of the Federal Form that notes the Waiver of Service that also extends the time to provide an Answer from 30 to 60 days." Id. at 2. He insists that LISC "was legally served properly" on October 20, 2023 when he mailed the complaint and waiver of service form to LISC's office of legal counsel. Id. at 2. The plaintiff states that "[o]f course LISC has not been served with an authenticated Summons and § 1691 Complaint," and alleges that LISC "wished" that it had been served by a "personal visit" or by certified mail or by certified FedEx delivery. Id. He says that LISC "was not expecting to be served by First Class USPS mail the way LISC was served on 20 October 2023, 8 days after 12 OCT 2023." Id.

The plaintiff next argues that a subpoena is properly served by mailing it by certified mail or non-certified mail, "because there is no prohibition that forbids that form of service within the Federal Rules of Civil Procedure Rule 45(b)." Id. at 4. The plaintiff states this is "consistent" with Wisconsin law authorizing mail as a form of service of "any type of legal pleading." Id. (citing Wis. Stat. §§801.14(2), 801.11(1)(c)).

According to the plaintiff, the subpoena gave LISC enough time to comply. Id. at 5. The plaintiff states that LISC received the subpoena in the mail on January 8 and was required to produce materials "5 days later on Friday 12 JAN 2024." Id. The plaintiff asks, "How much time does LISC need to simply open a file cabinet, retrieve a few pieces of paper and deliver those

17

pieces of paper five days later to an address that is within a short walking distance from Point A to Point B?" Id. The plaintiff asserts that the subpoena did not require LISC to appear personally; he argues that it "only directed LISC to provide the materials asked for on or before January 12th 2024 at 1000 CST in Room 222 before Judge Pepper." Id. He asserts that under Fed. R. Civ. P. 45(d)(2)(A), unless the subpoena demands the recipient to appear for a "disposition," hearing or trial, the recipient "is free to simply forward the materials in question to the place of production without having to make an appearance at the place of production." Id.

After more pages of quoted rules, legislation and illegible text, the plaintiff argues that LISC is not a "corporation in the traditional sense of the word" and thus "should not expect personal service under Wis. Stat. §801.11(5)(a) . . . ." Oddly, the plaintiff later cites a case stating that "Rule 4 does not contemplate service by registered mail on individuals or businesses," a statement that appears to contradict his argument that he properly effected service by mailing the complaint and waiver of service form. Id. at 17 (quoting Enduring Love Int'l Church v. Halloin, Case No. 23-cv-1120, 2023 WL 8186975 (E.D. Wis. Nov. 27, 2023).

The plaintiff ends by arguing that LISC is improperly trying to avoid liability for refusing to provide access to a credit application "for a grant or forgivable loan under the Wisconsin Department of Administration's Diverse Business Initiative Grant Program" to assist a small business owner in recovering from the pandemic,

18

and not a program to serve as a charity handout to racial minority groups who at no time ever create or build a business from nothing but who have historically sought shelter with a [non-profit organization], or sought shelter with Affirmative Action State Bureaucratic Programs to hire the economically disadvantaged class of persons under 15 U.S.C.A. § 1691(c)(1). Racial Minority group members who have been historically disadvantaged do not normally own a business because they lack the intellectual sophistication in managing a budget, operating a business, do not understand markets, do not understand IT Systems, do not understand supply chains, do not understand financials, do not understand taxation structures, do not understand regulatory compliance, have no training in operations management, and obviously have mental impairments, etc. And that is the reason these historically disadvantaged minority groups turn to the world of the [non-profit organizations]. How many small businesses that are owned by a member of a historically disadvantaged group (Not counting Asian Migrants or Latin American Migrants of European Heritage) exist in Zip Code 53202 and Zip Code 53204 that managed to survive the COVID-19 Pandemic? How many small businesses are owned by a member of a historically disadvantaged minority group (Not counting Asian Migrants or Latin American Migrants of European Heritage) who are also employed on the side for a unit of government as a recipient of Affirmative Action exist in the Milwaukee SMSA that managed to survive the COVID-19 Pandemic?

Id. at 19.

In its reply, LISC reiterates that the plaintiff has not filed a proof of service and did not properly serve it with the summons and complaint, as the plaintiff himself acknowledges. Dkt. No. 27 at 2 (quoting Dkt. No. 26 at 2 ("Of course LISC has not been served with an authenticated Summons and § 1691 Complaint")). LISC argues that the case law cited by the plaintiff supports its position that LISC was not properly served via mail. Id. at 3. LISC also reiterates that the plaintiff's subpoena was an improper discovery request, given that the court has no personal jurisdiction over LISC. Id. at 4.

19

On February 20, 2024—again, without filing a motion for leave to do so—the plaintiff filed a sur-reply. Dkt. No. 29. For the reasons the court explained above, the court has not considered the unauthorized sur-reply.

E.    The Plaintiff's Second Motion for Default Judgment (Dkt. No. 31)

The last outstanding motion is the plaintiff's second motion for default judgment against LISC. Dkt. No. 31. In it, the plaintiff repeats his arguments that LISC was properly served via mail in October 2023 and that it failed to timely respond, making default judgment proper. Id. at 1. LISC responded briefly, referring the court to the opposition arguments in its motion to dismiss and motion to quash subpoena. Dkt. No. 32.

## II.    Legal Standards

A.    Personal Jurisdiction and Service of Process

A federal court cannot decide a case unless it has personal jurisdiction over the defendant. Brook v. McCormley, 873 F.3d 549, 551–52 (7th Cir. 2017) (citations omitted). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987). A federal court "cannot exercise personal jurisdiction over a defendant unless the defendant has been properly served with process," and "the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and complaint." United States v. Ligas, 549 F.3d 497, 500 (7th Cir. 2008) (citations omitted). When a defendant challenges the manner of service through a motion

20

to dismiss under Rule 12(b)(5), the plaintiff bears the "burden to demonstrate that the district court has jurisdiction over each defendant through effective service." Cardenas v. City of Chicago, 646 F.3d 1001, 1005 (7th Cir. 2011).

Federal Rule of Civil Procedure 4 governs service of process in federal courts. Rule 4(h)(1) requires that a corporation, partnership or association must be served

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1).

Rule 4(e)(1) allows a party to serve an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Under relevant Wisconsin state law, a corporation or limited liability company may be served:

> (a) By personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company either within or without this state. In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.
>
> (b) If with reasonable diligence the defendant cannot be served under par. (a), then the summons may be served upon an officer, director or managing agent of the corporation or limited liability company by publication and mailing as provided in sub. (1).

21

(c) By serving the summons in a manner specified by any other statute upon the defendant or upon an agent authorized by appointment or by law to accept service of the summons for the defendant.

Wis. Stat. §801.11(5).

Finally, Rule 4(m) requires that if a defendant is not "served within 90 days after the complaint is filed, the court—on its own motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specific time." Fed. R. Civ. P. 4(m). The rule provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id. "In other words, if good cause for the delay is shown, the court must extend the time for service, while if good cause is not shown, the court has a choice between dismissing the suit and giving the plaintiff more time." United States v. McLaughlin, 470 F.3d 698, 700 (7th Cir. 2006) (citations omitted). "Thus a plaintiff who fails to demonstrate good cause for his delay throws himself on the mercy of the district court." Id.

B.     Motions to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint that fails to state a claim upon which relief can be granted. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint.'" Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)). On a Rule 12(b)(6) motion, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Silha v.

22

ACT, Inc., 807 F.3d 169, 173 (7th Cir. 2015) (quotation omitted). A plaintiff must include "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting Lang v. TCF Nat'l Bank, 249 F. App'x. 464, 466 (7th Cir. 2007)). "[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." Swanson v. Citibank, N.A., 614 F.3d 400, 403 (7th Cir. 2010).

## C. Rules Governing Subpoenas and Discovery

Federal Rule of Civil Procedure 45(b)(1) states that any person who is not a party to the lawsuit, and who is over the age of eighteen, may serve a subpoena. The rule states that "[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Id. Rule 45(d)(2)(A) states that "a person commanded to produce documents . . . or tangible things . . . need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial." Rule 45(d)(3)(A) requires a court to quash a subpoena where the subpoena "fails to allow a reasonable time to comply" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "Determining whether a subpoena subjects a witness to an 'undue burden' requires a court to inquire into the subpoena's

23

reasonableness, balancing 'the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" <u>Mirbeau of Geneva Lake LLC v. City of Lake Geneva</u>, Case No. 08-CV-693, 2009 WL 3347101, at *4 (E.D. Wis. Oct. 15, 2009) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2463 (2d ed.1995)).

Federal Rule of Civil Procedure 26 governs discovery in federal court. Rule 26(d) states that a party may not seek discovery "from any source before the parties have conferred as required by Rule 26(f) except . . . when authorized . . . by court order." Fed. R. Civ. P. 26(d)(1). This principle applies to subpoenas issued under Rule 45. <u>Kohler Co. v. Nulka Grp. Storefront on www.amazon .com</u>, Case No. 23-CV-0372, 2023 WL 2919831, at *1 (E.D. Wis. Mar. 23, 2023). District courts in this circuit have held that "a party seeking expedited discovery must show good cause for the request." <u>Wuluvarana v. Does</u>, Case No. 22-cv-982, 2023 WL 183874, at *3 (E.D. Wis. Jan. 13, 2023) (collecting cases). "A court may find that there is good cause 'when the need for expedited discovery, in consideration with the administration of justice, outweighs the prejudice to the responding party.'" <u>Id.</u> (quoting <u>Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.</u>, Case No. 17-cv-00949, 2017 WL 11573559, at *1 (S.D. Ind. May 11, 2017)). Relevant factors include:

> (1) the concreteness of the plaintiff's showing of a prima facie claim of actionable harm, ... (2) the specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) the need for the subpoenaed information to advance the claim, ... and (5) the objecting party's expectation of privacy.

Strike 3 Holdings, LLC v. Doe, Case No. 23-cv-1550, 2024 WL 946268, at *1
(E.D. Wis. Feb. 7, 2024) (quoting Malibu Media, LLC v. Doe, Case No. 18 C
5792, 2019 WL 7876473, at *2 (N.D. Ill. Jan. 2, 2019)).

## III.    Analysis

### A.    LISC

The court addresses LISC's motion to dismiss for insufficient service of
process (dkt. no. 20) along with the plaintiff's motion to reconsider the court's
denial of his first motion for default judgment (dkt. no. 12) and his second
motion for default judgment (dkt. no. 31), because whether the plaintiff is
entitled to default judgment against LISC is dependent on whether he properly
served LISC.

#### 1.    *The Plaintiff Has Not Properly Served LISC*

Contrary to the plaintiff's assertions, LISC—Local Initiatives Support
Corporation—*is* a corporation. It is registered with the State of Wisconsin
Department of Financial Institutions as a foreign, non-stock corporation
incorporated in September 2001, with its principal office in New York, New
York and a registered agent in Madison, Wisconsin. https://apps.dfi.wi.gov/
apps/CorpSearch/Details.aspx?entityID=L034371&hash=667451406&searchF
unctionID=8ab10703-7573-498f-b13d-ca40400e9329&type=Simple&q=local
+initiatives+support+corporation. Because LISC is a corporation, the plaintiff
was required to follow the federal and state rules for serving corporations when
serving LISC.

The plaintiff's first option under Rule 4(h)(1) for serving LISC was to effect service "in the manner prescribed by Rule 4(e)(1) for serving an individual," which means effecting service under Wisconsin law. Under Wisconsin law, the plaintiff was required to personally serve the summons on an officer, director or managing agent of LISC (or leave a copy in the office of the officer, director or managing agent). The plaintiff repeatedly has stated that he attempted service on LISC only via certified mail. See, e.g., Dkt. No. 26 at 1 ("Complaint was served on Respondent LISC via USPS."). The plaintiff did not try to personally serve any of those individuals, nor did he try to leave the summons and complaint at the offices of any of those individuals.

Only if a plaintiff has exercised "reasonable diligence" in trying to personally serve the summons and complaint and has been unable to do so does Wisconsin law allow the plaintiff to serve a corporate entity by mail, and even then, service by mail alone is not sufficient. Wis. Stat. §801.11(5)(b) requires "*publication* and mailing" (emphasis added). Service by both publication and mailing is permissible only when "with reasonable diligence the defendant cannot be served" personally. Wis. Stat. §801.11(5)(b); Halloin, 2023 WL 8186975 at *4. The plaintiff has not argued that he attempted personal service on an officer, director, managing agent or registered agent of LISC, nor has he provided the court with any evidence that he attempted personal service. Nor has the plaintiff argued that he effected service by publication, or presented evidence that he effected service by publication.

26

Even if the plaintiff had exercised due diligence in trying to personally serve LISC and been unsuccessful, and even if he had provided the court with proof that he'd effected service by publication, the plaintiff's own statements show that he did not serve the *summons* as required by both federal and state rules. The plaintiff provided the court with a proof of delivery receipt that shows that something was delivered via first-class certified mail to 234 W Florida St., Ste 204, Milwaukee, WI 53204. Dkt. No. 12 at 3. But the plaintiff concedes that that no summons accompanied the mailed complaint, only a waiver of service form that LISC never executed. Dkt. No. 26 at 2 ("Of course LISC has not been served with an authenticated Summons and § 1691 Complaint.").

In sum, the plaintiff did not effect proper service under Wisconsin law. That necessarily means that he did not properly serve LISC under federal law. Under the federal rule—Fed. R. Civ. P. 4—the two options available for serving a corporation are effecting service under federal law or, under Fed. R. Civ. P. 4(h)(1)(B), by personally serving the summons and complaint on an officer, managing or general agent, or other agent authorized by appointment or law to accept service. The court already has explained that the plaintiff agrees that he did not effect personal service. So the plaintiff has not properly served LISC under federal or state law.

The court has recounted that Rule 4(m) sets a deadline by which a plaintiff must serve a defendant—ninety days from the date he files his complaint. The plaintiff filed the complaint on October 12, 2023. Under Rule

27

4(m), the plaintiff had ninety days from that date—until January 10, 2024—to effect service. He did not do so (and, as far as the court is aware, as of the date of this order has not done so). If a plaintiff does not timely serve the summons and complaint, Rule 4(m) requires the court either to dismiss the case without prejudice or "order that service be made within a specified time" (in other words, extend the plaintiff's deadline for properly serving the defendant).

There is no basis for the court to "order that service be made within a specified time." This court's December 10, 2023 order denying the plaintiff's first motion for default judgment alerted him that he had not shown he properly served LISC. Dkt. No. 10 ("The court DENIES WITHOUT PREJUDICE the plaintiff's motion for default judgment because the plaintiff has not provided an executed waiver of service for LISC or otherwise shown proof of service."). Despite that warning, the plaintiff did not ask the court for additional time to serve LISC and, as far as the court knows, did not try to properly serve LISC. LISC filed its motion to dismiss for lack of proper service on January 11, 2024—the day after the ninety-day deadline for service expired. Upon receiving that motion, the plaintiff could have asked the court to extend his deadline for properly serving LISC. He could have said, "I didn't understand that I couldn't serve LISC by certified mail—now that I know that, please give me additional time to properly serve LISC." Instead, the plaintiff doubled down, arguing that he had properly served LISC and that LISC was wrong to say that he had not done so. The plaintiff has not provided the court with a reason to set a new date for effecting service.

28

Rule 4(m) *requires* a court to extend the deadline for effecting service if a plaintiff "shows good cause" for his failure to properly serve within the ninety-day period. In his many pages of briefing, the plaintiff has not provided any explanation or justification for his failure to properly serve LISC. He has insisted that service by mail is proper, even though both the federal and state rules require otherwise. The plaintiff has not shown good cause for his failure to effect proper service within ninety days.

### 2. *This Court Does Not Have Personal Jurisdiction Over LISC*

Because the plaintiff has not met his burden to show that he properly served LISC, this federal court does not have personal jurisdiction over LISC. Ligas, 549 F.3d at 500. The court must grant LISC's motion to dismiss the complaint against it for insufficient service of process under Rule 12(b)(5). Dkt. No. 20.

### 3. *The Plaintiff is Not Entitled to Default Judgment*

The plaintiff's failure to properly serve LISC, and the resulting fact that this court does not have personal jurisdiction over LISC, mean that the plaintiff is not entitled to default judgment.

Federal Rule of Civil Procedure 55 requires a two-step process before a court may grant default judgment. If "[the] party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," the plaintiff may file a motion asking the clerk to enter a "default." Rule 55(a). A defendant is required to "plead or otherwise defend," however, only if that defendant has been properly served.

29

Because the plaintiff did not properly serve LISC, LISC was not required to answer or otherwise respond to the complaint, so it has not "defaulted."

Even if LISC had "defaulted"—and the plaintiff had filed a proper request for default—this court could not enter default *judgment* in his favor. The second step of Rule 55's two-step default judgment process allows a plaintiff who has obtained entry of default against a defendant to file a motion for default judgment under Rule 55(b). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action stated in the complaint." <u>e360 Insight v. The Spamhouse Project</u>, 500 F.3d 594, 602 (7th Cir. 2007) (citing <u>United States v. Di Mucci</u>, 879 F.2d 1488, 1497 (7th Cir. 1989)). But "if the district court lacked personal jurisdiction over the defendant at the time [the court] entered the default judgment, the judgment is void . . . ." <u>Relational, LLC v. Hodges</u>, 627 F.3d 668, 671 (7th Cir. 2010) (citing <u>Homer v. Jones-Bey</u>, 415 F.3d 748, 753 (7th Cir. 2005)). "Stated differently, a judgment is void as to any party who was not adequately served." <u>Id.</u> (citations omitted).

The court did not err in denying the plaintiff's first motion for default judgment against LISC (because at that time, the plaintiff had not provided the court with any proof of service), so the court will deny the plaintiff's motion for reconsideration of that ruling. Dkt. No. 12. Because the plaintiff has not properly served LISC and because the court does not have personal jurisdiction over LISC, the court must deny the plaintiff's second motion for default judgment. Dkt. No. 31.

The court will dismiss the complaint as to LISC.

B.    MEDC

The complaint alleges that the court has subject matter jurisdiction under the Equal Credit Opportunity Act. Dkt. No. 1 at 1. It cites caselaw discussing that statute. So the court assumes that the plaintiff is alleging that MEDC violated that statute.

To state a claim for a violation of the ECOA, a plaintiff must demonstrate that "[he] was an 'applicant' and that the defendants treated [him] less favorably because of" his membership in a protected class. Est. of Davis v. Wells Fargo Bank, 633 F.3d 529, 538 (7th Cir. 2011); 15 U.S.C. §1691(a)(1)–(3). Protected classes include "race, color, religion, national origin, sex or marital status, or age" as well as any applicant that derives income "from any public assistance program." 15 U.S.C. §1691(a)(1)–(3).

MEDC argues that the plaintiff is not an "applicant" under the ECOA. Dkt. No. 5 at 4–6. The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. §1691a(a). In July 2024, the Seventh Circuit held that a creditor also violates the ECOA when it discourages "prospective applicants" from applying for credit. Consumer Fin. Prot. Bureau v. Townstone Fin., Inc., 107 F.4th 768, 775–76 (7th Cir. 2024) (citing 12 C.F.R. §202.4(b)). The Seventh Circuit did not clarify what it means to be a "prospective applicant" or what constitutes "discouragement" of

31

prospective applicants, and no subsequent case has considered the issue in the almost three months since the court issued its opinion. The parties did not provide supplemental briefing on this new authority. The court will assume, for the sake of argument, that the complaint's allegations that Vega Global Advisors called MEDC and asked to speak with a loan officer are sufficient to establish that the plaintiff/Vega Global Advisors was a "prospective applicant" for credit. Dkt. No. 1 at 3–4.

But even if the plaintiff or Vega Global Advisors met the definition of a "prospective applicant"—or even an "applicant"—the complaint does not allege that the plaintiff is a member of a protected class or that he suffered discrimination due to his membership in a protected class. The plaintiff does not identify his "race, color, religion, national origin, sex or marital status, or age," or allege that membership in any of those protected classes was the reason he was denied access to credit. 15 U.S.C. §1691(a)(1). It is true that "[t]he ECOA prohibits discrimination against those who receive public assistance when they enter into a credit transaction." Laramore v. Ritchie Realty Management Co., 397 F.3d 544, 548 (7th Cir. 2004). But the complaint does not allege that the plaintiff (or Vega Global Advisors) receives income from public assistance. The complaint alleges only that MEDC denied Vega Global Advisors access to credit because "the income in question was affected by the COVID-19 Pandemic which was based on income that derived from part-time employment, or a 401k, or revenue held in reserve." Dkt. No. 1 at 4. None of those income sources are a "public assistance program." And even if the

32

plaintiff (or Vega Global Advisors) had alleged that he received income from a public assistance program, the plaintiff does not allege that MEDC knew the source of his income. See Swanson v. PNC Bank, Nat'l Ass'n, Case No. 21-2930, 2022 WL 989361, at *2 (7th Cir. Apr. 1, 2022) (affirming motion to dismiss because plaintiff failed to state a claim for ECOA violation by failing to allege that defendant knew she was in protected class when it denied her application).

In his opposition to the motion to dismiss, the plaintiff argues that he "has alleged that he was a member of a protected class, (a qualified small business in census tracts within 53202 and 53204)." Dkt. No. 9 at 5. That allegation does not appear in the complaint, and "qualified small business in census tracts within 53202 and 53204" is not a protected class under the ECOA. See 15 U.S.C. §1691(a)(1)–(3). The only mention of an actual protected class (race) comes at the end of the plaintiff's opposition brief, where he argues the following:

> The Diverse Business Initiative Grant Program was created as a Special Purpose Credit Program designed to assist small businesses recover from the COVID-19 Pandemic and not a program to serve as a handout to racial minority groups who at no time ever create or build a business from nothing but who have historically sought shelter with a [non-profit organization], the economically disadvantaged class of persons under 15 U.S.C.A. § 1691(c)(l) MEDC mentions. . . . Racial minority group members who have been historically disadvantaged do not normally own a business because they lack the intellectual sophistication in managing a budget, operating a business, or do not understand markets, do not understand IT Systems, etc. And that is the reason these historically disadvantaged minority groups turn to the world of the NPOs. How many small businesses that are owned by a member of a historically disadvantaged minority group exist in Zip Code 53202 and Zip Code 53204 that managed to survive the COVID-19 Pandemic? How many

33

small businesses are owned by a member of a historically
disadvantaged minority group but who also are employed for a unit
of government with the grace of Affirmative Action exist in the
Milwaukee SMSA that managed to survive the COVID-19 Pandemic?

Dkt. No. 9 at 17.

Perhaps the plaintiff meant the above language as an argument that
MEDC discriminated against him (or Vega Global Advisors) by awarding funds
to "racial minority groups" instead of the plaintiff. But he did not make that
allegation in the *complaint*, which is the document the court must review on a
Rule 12(b)(6) motion to dismiss. The complaint does not identify the plaintiff's
race or ethnicity and did not identify anyone of any other race or ethnicity who
received the grant or forgivable loan for which the plaintiff alleges he attempted
to apply. Walton v. First Merchants Bank, 772 F. App'x 349, 351 (7th Cir.
2019) (bare allegation that "white customers were not mistreated" was
insufficient to establish race discrimination under the ECOA). The complaint
alleges that Vega Global Advisors spoke to someone at MEDC over the phone;
the court cannot infer from that allegation that the plaintiff advised the person
with whom he spoke of his race or ethnicity. See Swanson, 2022 WL 989361 at
*2 (no allegations supporting that defendant knew applicant's race where she
submitted a loan application without meeting defendant in person). Even
viewing the allegations in the light most favorable to the plaintiff, the complaint
does not state a claim that MEDC discriminated against the plaintiff due to his
membership in a protected class.

MEDC also argues that even if it had "denied" the plaintiff's alleged
application for credit, that would not have constituted discrimination because

34

the ECOA allows creditors to refuse credit under certain "credit assistance programs" if the rules of that program require it. Dkt. No. 5 at 8. MEDC says that the Diverse Business Initiative Grant program is such a special purpose credit program. Id. at 8-9. Neither party attached the terms of the Diverse Business Initiative Grant program to the complaint or their briefs, so the court cannot determine whether it qualifies as a special purpose credit program under the ECOA. Because the complaint on its face fails to state a claim for discrimination under the ECOA, the court need not consider this argument.

The court will grant MEDC's under Rule 12(b)(6) motion to dismiss the complaint against MEDC without prejudice for failure to state a claim. Dkt. No. 5.

C.     Subpoena to LISC

LISC asked the court both to dismiss the case against it and to quash the subpoena the plaintiff had sent it. The subpoena sought production of the envelope the plaintiff contends contained the complaint and waiver of service form that he sent to LISC. Dkt. No. 18. In essence, the plaintiff used a subpoena to try to obtain "discovery" from LISC that he believed would prove he served LISC. Federal Rule of Civil Procedure 26 states that a party may not seek discovery "from any source before the parties have conferred as required by Rule 26(f)" unless authorized by the court. Fed. R. Civ. P. 26(d)(1). The plaintiff filed the subpoena on January 10, 2024 and he dated it January 3, 2024. Dkt. No. 18. LISC did not appear in the case until January 11, 2024—after the plaintiff dated and filed the subpoena. The plaintiff has not argued or

35

provided proof that he conferred with LISC before issuing the subpoena and he did not ask the court's permission to conduct early discovery.

Even if the plaintiff had conferred with LISC before issuing the subpoena, the court would have been required to quash the subpoena for the same reason it must dismiss LISC. The court has held that the plaintiff did not effect proper service and that it does not have personal jurisdiction, so the court must quash the subpoena for lack of personal jurisdiction. Leibovitch v. Islamic Republic of Iran, 852 F.3d 687, 689 (7th Cir. 2017) (stating that to compel compliance with a Rule 45 subpoena, the court must have personal jurisdiction over the person subpoenaed).

Even if the court had personal jurisdiction over LISC—which it does not—the subpoena demanded production only of the mailing envelope allegedly containing the complaint and waiver form mailed to LISC. That envelope is irrelevant; as the court has explained, even assuming the plaintiff sent the complaint and waiver of service form by certified mail, that would not have been sufficient to effect proper service. The envelope is not relevant to the plaintiff's claims of discrimination under the ECOA. If the plaintiff wishes to proceed with his claims against LISC, he will be required to amend his complaint and properly serve LISC.

There also was a procedural error with the subpoena. The subpoena gave LISC only five days to comply. Federal Rule of Civil Procedure. 45(d)(2)(B) requires a person objecting to a subpoena to serve that objection before the date specified on the subpoena for compliance "or 14 days after the subpoena

36

is served." District courts in this circuit have held that that language suggests that a party serving a subpoena should give the recipient at least fourteen days to comply. See Matter of Holsen, Case No. 22-MC-24, 2022 WL 3213367 (E.D. Wis. Aug. 9, 2022) ("Rule 45(d)(2)(B) 'suggests that 14 days is the benchmark time for compliance, and courts have found that fourteen days from the date of service is presumptively reasonable.'" (quoting Elliot v. Mission Tr. Servs., LLC, Case No. 14-CV-9625, 2015 WL 1567901, at *4 (N.D. Ill. Apr. 7, 2015)).

On the other hand, LISC argued that the subpoena required it to appear in person. Rule 45(d)(2)(A) states that if a subpoena requires a party to produce documents, the party is not required to appear in person unless the subpoena also requires the recipient to appear for a deposition, hearing or trial. The subpoena the plaintiff filed with the court makes no mention of an appearance being required for a deposition, hearing or trial, and no such proceedings have ever been scheduled in this case.

At any rate, these issues are moot. Because the court has no personal jurisdiction over LISC, it must grant LISC's motion to quash the subpoena. Dkt. No. 20.

## IV. Conclusion

The court **GRANTS** MEDC's motion to dismiss for failure to state a claim. Dkt. No. 4.

The court **GRANTS** LISC's motion to dismiss and motion to quash subpoena. Dkt. No. 20.

37

The court **DENIES** the plaintiff's motion for reconsideration of default judgment. Dkt. No. 12.

The court **CONSTRUES** the plaintiff's motion to deny LISC's motion to dismiss and motion to quash subpoena as a brief in opposition to LISC's motion to dismiss, and **ORDERS** the clerk's office to docket it as such. Dkt. No. 26.

The court **DENIES** the plaintiff's second motion for default judgment. Dkt. No. 31.

The court **ORDERS** that the complaint is **DISMISSED WITHOUT PREJUDICE**.

The court **ORDERS** that the plaintiff may file an amended complaint. If the plaintiff chooses to file an amended complaint, he must file it in time for the court to *receive it* by the end of the day on **November 8, 2024**. If the court does not receive an amended complaint by the end of the day on November 8, 2024, the court will dismiss the case without further notice or hearing.

Dated in Milwaukee, Wisconsin this 30th day of September, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

38