UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PABLITO VEGA,

              Plaintiff,

                                       Case No. 23-cv-1357-pp

    v.

COMMUNITY DEVELOPMENT FINANCIAL
INSTITUTION LOCAL INITIATIVES SUPPORT
CORPORATION MILWAUKEE OFFICE
and COMMUNITY DEVELOPMENT FINANCIAL
INSTITUTION MILWAUKEE ECONOMIC
DEVELOPMENT CORPORATION,

              Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
(DKT. NOS. 36, 41) AND DISMISSING CASE WITH PREJUDICE**

---

On November 7, 2024, the plaintiff, who is representing himself, filed an amended complaint alleging that the defendants had denied him access to credit in violation of the Equal Credit Opportunity Act, 15 U.S.C. §1691. Dkt. No. 35. Both defendants have moved to dismiss the amended complaint for failure to state a claim for relief. Dkt. Nos. 36, 41. The court will grant those motions and dismiss the case with prejudice.

**I.    Background**

    A.    <u>Procedural History</u>

The plaintiff filed the original complaint on October 12, 2023. Dkt. No. 1. Two months later, defendant Community Development Financial Institution Milwaukee Economic Development Corporation (MEDC) filed a motion to

1

dismiss the complaint for failure to state a claim for relief. Dkt. No. 4. Defendant Community Development Financial Institution Local Initiatives Support Corporation Milwaukee Office (LISC) filed its motion to dismiss the complaint for insufficient service of process a few days later. Dkt. No. 20. The court determined that the plaintiff had not properly served LISC and granted its motion to dismiss the original complaint. Dkt. No. 34 at 29–31. The court also found that the complaint did not state a claim for relief as to MEDC and granted its motion to dismiss. Id. at 35. But the court dismissed the complaint without prejudice and gave the plaintiff leave to amend. Id. at 38.

As stated, the plaintiff filed the amended complaint on November 7, 2024, making substantially similar allegations to those he'd made in his original complaint. Dkt. No. 35. On November 21, 2024, MEDC filed a motion to dismiss the amended complaint for failure to state a claim. Dkt. No. 36. On November 27, 2024, LISC filed a motion to dismiss the amended complaint for lack of jurisdiction. Dkt. No. 38. The plaintiff had twenty-one days from the date each of the motions were filed to respond to the motions to dismiss the amended complaint (the due dates were December 12, 2024 for MEDC's motion and December 24, 2024 for LISC's), but did not timely do so. Because the plaintiff is representing himself and may not have been aware of the deadlines, the court gave him a short extension of time by which to respond to the motions. Dkt. No. 40. The court ordered that the plaintiff must respond to the motions by the end of the day on February 3, 2025, or it would treat the motions as unopposed. Id.

On January 28, 2025, LISC filed another motion to dismiss the amended complaint—this time for failure to state a claim, dkt. no. 41—and another motion to dismiss Theodore Lipscomb, LISC's Executive Director, as a "potentially named defendant," dkt. no. 45. On the same day, MEDC filed a motion to dismiss the amended complaint as to David Latona, MEDC's President, as a "potentially named defendant." Dkt. No. 43. Both defendants stated that they had received summonses naming Lipscomb and Latona, rather than their respective companies, as defendants. On February 3, 2025, the plaintiff filed a "motion to deny" the defendants' motions. Dkt. No. 47. LISC filed a reply to the plaintiff's response brief. Dkt. No. 50. MEDC did not reply.

On February 20, 2025, the court held a status conference to discuss the pending motions. Dkt. Nos. 53, 54. At the hearing, the plaintiff confirmed that he had served the amended complaint on the named individuals—David Latona and Theodore Lipscomb—only as agents of the corporations and that he intended to sue only the two corporate defendants. Dkt. No. 54 at 1. Accordingly, the court denied as moot the motions to dismiss the amended complaint as to "potential defendants" Lipscomb and Latona. (Dkt. Nos. 43, 45). Id. LISC advised the court that it wished to proceed only with its motion to dismiss the amended complaint for failure to state a claim because its jurisdictional challenge based on lack of service had been rendered moot. Id. The court denied as moot LISC's motion to dismiss the amended complaint (Dkt. No. 38). Id. The plaintiff clarified that the response brief he'd filed on February 3, 2025 was a response to both defendants' motions to dismiss the

3

amended complaint for failure to state a claim. Id. The court confirmed with the parties that the motions to dismiss at Dkt. Nos. 36, 41 were the remaining motions for the court to decide. Id. at 2. This order addresses those motions.

      B.    <u>Factual Allegations</u>

The amended complaint alleges that in March 2021, the federal government awarded the state of Wisconsin $2.5 billion in economic assistance funds "to address recovery efforts from the COVID-19 Pandemic to small businesses that included entities such as Vega Global Advisors." Dkt. No. 35 at 2. It alleges that the state directed $42 million of that economic assistance "to small businesses in the form of grants and forgivable loans that would be managed by several Community Development Financial Institutions." Id. It avers that these institutions were to award the funds to small businesses based on criteria set by the state in the Diverse Business Investment Program (DBIP) grant agreement. Id. The amended complaint alleges that the DBIP's purpose was to "provide funding to Community Development Financial Institutions to support grants and forgivable loans to small businesses in qualified census tracts or areas disproportionately impacted by the COVD-19 pandemic." Id. It avers that the defendants received a total of $8.3 million in grant funding to distribute under the DBIP. Id.

The amended complaint alleges that on September 30, 2022, the plaintiff had a video call with Matt Melendes, a "staffer" at LISC, regarding possible grant funding or a forgivable loan for his business, Vega Global Advisors. Id. at 3. It alleges that Melendes "categorially denied that LISC Milwaukee did not

4

function as a traditional financial lender" and stated that LISC "only provided construction loans to prospective borrowers for the purpose to revitalize portions of Walkers Point" (a neighborhood in Milwaukee). <u>Id.</u> It alleges that Melendes also told the plaintiff that a small business must report "satisfiable revenue numbers from 2020 to 2022" for LISC to assess the business's ability to repay the loan. <u>Id.</u> The amended complaint alleges that Melendes did not acknowledge that LISC had received funds from the state's DBIP program and instead told the plaintiff to look for venture capitalist funding. <u>Id.</u> It asserts that Melendes "constantly lied" and "refused to transfer the call to an authorized Loan Officer." <u>Id.</u> It asserts that LISC is a "non-transparent and corrupt entity deciding for itself who not to provide a Small Business Grant" under the DBIP. <u>Id.</u>

The amended complaint contends that Melendes "acted against Vega Global Advisors" because the plaintiff was "a White European Male not from the Midwest but from Europe" and because his "accent or tone of voice . . . was not Kosher to any of the Midwest accents found throughout the 15 State Midwestern portion of North America." <u>Id.</u> It alleges that LISC violated Vega Global Advisors' "right to access a credit source" due to the plaintiff's status as a "member of a protected class who was a White European Male" otherwise qualified to receive a grant. <u>Id.</u> It avers that LISC "is not a corporate entity" and alleges that LISC's executives are "simply Affirmative Action Political Hacks." <u>Id.</u> at 3–4. The amended complaint alleges that the DBIP was created to assist small business with recovery from the COVID-19 pandemic

5

and not a program to serve as a charity handout to racial minority groups who at no time ever create or build a business from nothing but who have historically sought shelter with a NPO [non-profit organization], or sought shelter with Affirmative Action State Bureaucratic Programs to hire the economically disadvantaged class of persons under 15 U.S.C.A. §1691(c)(1). Racial minority group members who have been historically disadvantaged do not normally own a business because they lack the intellectual sophistication in managing a budget, operating a business, do not understand markets, do not understand IT Systems, do not understand supply chains, do not understand financials, do not understand taxation structures, do not understand regulatory compliance, have no training in operations management, and obviously have mental impairments, etc. And that is the reason these historically disadvantaged minority groups turn to the world of the NPOs. How many small businesses that are owned by a member of a historically disadvantaged minority group (Not counting Asian Migrants or Latin American Migrants of European Heritage) exist in Zip Code 53202 and Zip Code 53204 that managed to survive the COVID-19 Pandemic? How many small businesses are owned by a member of a historically disadvantaged minority group (Not counting Asian Migrants or Latin American Migrants of European Heritage) who are also employed on the side for a unit of government as a recipient of Affirmative Action exist in the Milwaukee SMSA that managed to survive the COVID-19 Pandemic?

Id. at 4.

The amended complaint alleges that MEDC denied the plaintiff access to a grant or a forgivable loan. Id. It asserts that on October 27, 2022, the plaintiff spoke with a person named Beth at MEDC who "refused to connect the call with an authorized Loan Officer" despite the plaintiff asking her to do so twice. Id. It alleges that after losing the call, the plaintiff called MEDC again, and a person named Diane answered and refused to connect the plaintiff with Beth or a loan officer. Id. It alleges that Beth "repeatedly denied that the [MEDC] had any grants or forgivable loans on hand derived from the State of Wisconsin to provide to small businesses affected by the COVID-19 Pandemic for any

purpose." Id. at 5. The amended complaint asserts that Beth never acknowledged that MEDC had received $5 million from Wisconsin to provide such grants or loans and describes that as "criminal behavior." Id. It alleges that the plaintiff "was obviously denied credit by being prevented to submit a Grant Application" and that his business was "the subject in effect of a criminal fraudulent act that one more time violated Vega Global Advisors right to access a credit source." Id. As it did against LISC, the amended complaint alleges that MEDC denied the plaintiff access to funds because he is a "White European Male not from the Midwest but from Europe" and because his "accent or tone of voice . . . was not Kosher to any of the Midwest accents." Id.

The amended complaint alleges that the Award Agreement between Wisconsin and LISC and MEDC (which the plaintiff did not attach to the amended complaint) does not authorize either agency to add new criteria or conditions "to negate the providing of either a grant or forgivable loan to a qualified small business that meets all prior criteria and qualifications to be granted the grant or forgivable loan." Id. The amended complaint repeatedly alleges that MEDC's employees, Beth and Diane, were not authorized to deny the plaintiff access to a grant application. Id. at 6. According to the amended complaint, Beth and Diane "simply believed that [the plaintiff] was simply another unemployed dark skin racial minority asking for a State handout." Id. It alleges that MEDC awarded $900,000 in "Working Capital" to another unidentified recipient that the plaintiff claims was "at no time . . . at risk of bankruptcy or failure or being put out of business permanently by the COVID-

19 Pandemic" because it received funds from Medicare or Medicaid. Id. at 7. It asserts that the unidentified recipient "simply cheated at least 90 other small businesses each out of $10,000 they could have use[d] in support of their day-to-day operations." Id. at 8. The amended complaint does not state the name of this business or provide any information about the race or ethnicity of the business's owners or applicants.

The amended complaint asks the court to "order both entities to release to [the plaintiff] a Grant in the amount of $200,000 each" and an additional $200,000 each as "punitive compensation" for the "fraudulent acts committed against him." Id.

## II.    Parties' Arguments

### A.    MEDC's Motion to Dismiss (Dkt. No. 36)

MEDC argues that the court must dismiss the amended complaint because it does not establish that MEDC discriminated against the plaintiff or that Vega Global Advisors was qualified to receive funding via the DBIP. Dkt. No. 37 at 4. MEDC argues that under the Equal Credit Opportunity Act (ECOA), the plaintiff must show that he was treated less favorably than other applicants based on his membership in a protected class. Id. It argues that the amended complaint alleges only that another entity received a grant from MEDC, but does not identify the entity, state whether its owner is member of a protected class or provide any other details about how MEDC treated the plaintiff differently than this entity. Id. MEDC argues that the plaintiff's assertion that he was denied credit because he is a "White European Male not

8

from the Midwest but from Europe" is conclusory and insufficient to state a claim for relief. Id. at 5. According to MEDC, the plaintiff has not pled facts demonstrating that MEDC knew his race, ethnicity or national origin. Id. MEDC argues that for these reasons, the plaintiff has not stated a claim for discrimination under the ECOA. Id.

MEDC argues that its purported denial of credit to the plaintiff is not discriminatory because the DBIP is a credit assistance program "expressly authorized by law for an economically disadvantaged class of persons." Id. at 5–6. MEDC maintains that the plaintiff does not fit into the class of persons described by the DBIP. Id. at 6. According to MEDC, the state required any DBIP grants to be used for specific purposes including "restocking inventory (no alcohol), PPE for employees or customers, physical modifications of space to align with COVID guidance, cost of rent or principal/interest for building mortgage, utilities, and payroll." Id. MEDC contends that the plaintiff has pled that he wanted to use the loan to "revitalize a shuttered property in Milwaukee," which is not an approved purpose. Id. MEDC states that the plaintiff articulated in the amended complaint another set of eligibility requirements—"being registered with the WDFI if required; experience providing culturally competent technical assistance services to Diverse Businesses; operating no later than January 1, 2020; conducting operations and having an administrative presence in Wisconsin"—but that he has not pled facts showing that his business meets those qualifications, either. Id. MEDC contends that even if it denied the plaintiff credit based on his race or ethnicity,

9

the denial would not be considered discrimination under the ECOA. Id. MEDC also asserts that the deadline to apply for DBIP funding already had passed when the plaintiff contacted MEDC and a denial based on the program's application requirements is not discriminatory. Id. at 7. MEDC argues that the amended complaint fails to state a claim for this reason, as well. Id.

B. LISC's Motion to Dismiss (Dkt. No. 41)

LISC argues that the court must dismiss the amended complaint because the plaintiff does not allege that he was an "applicant" under the ECOA or that he was denied access to credit because of his membership in a protected class. Dkt. No. 42 at 5. LISC argues that the plaintiff must show that he applied for a loan for which he was qualified, which LISC says the plaintiff cannot do because he never completed a loan application. Id. at 5–6. LISC acknowledges that prospective applicants may bring ECOA claims if they were discouraged from applying for credit on a prohibited basis, but argues that the amended complaint does not identify any statements LISC made that discouraged the plaintiff from applying for credit. Id. at 6. LISC argues that merely telling the plaintiff that there were no loans or grants available for the plaintiff's stated purpose does not establish a discouragement claim under the ECOA. Id. at 7. LISC argues that the amended complaint contains no allegations that the plaintiff submitted a credit application, so there is no basis for an ECOA claim. Id. at 8.

LISC argues that even if the court were to consider the plaintiff an applicant, his claim must fail because he has not alleged that he was denied

10

credit due to his membership in a protected class. Id. LISC states that protected classes under the ECOA include "race, color, religion, national origin, sex or marital status, or age" or those who receive income "from any public assistance program." Id. at 8–9 (quoting 15 U.S.C. §1691(a)(1)–(3)). LISC contends that to the extent the plaintiff was denied credit, it was because LISC did not offer the type of loan or grant he sought. Id. at 9. LISC states that the complaint's allegations of discrimination based on the plaintiff's accent or status as a "White European Male" are conclusory, without any facts offered in support. Id. LISC argues there are no allegations that LISC treated other applicants more favorably. Id. It asserts that the plaintiff has not alleged that he disclosed his race, ethnicity or national origin to LISC during their call. Id. at 10. LISC contends that the court should dismiss the amended complaint with prejudice because this is the plaintiff's second attempt at pleading a viable claim and he has failed to do so. Id.

C.     The Plaintiff's Response (Dkt. No. 47)

The plaintiff states that he was not able to file his response to the motion to dismiss on time because in November 2024, he was hospitalized. Dkt. No. 47 at 1. The plaintiff first argues that "MEDC is not a corporate entity" and that he has no obligation to plead facts to pierce the corporate veil. Id. He asserts that he did identify statements that LISC made that discouraged him from applying for credit. Id. The plaintiff states that LISC staffer Matt Melendes hid the fact that LISC had grant funds available and refused to connect the plaintiff with a loan officer. Id. He asserts that the "entire conversation [with Melendes] was

11

the oral statement" that discouraged him from obtaining a credit application.

Id. According to the plaintiff:

> Matt Melendes during the video call could not come to grips with the fact that the Petitioner Vega was a White European who created a private StartUp. Instead, Matt Melendes was expecting Petitioner Vega to be a fellow ideological socialist comadre [sic] dark skinned Mulatto Affirmative Action seeking racial minority looking for a state welfare handout to subsidize his small business.

Id. at 1–2.

The plaintiff argues that LISC awarded seven grants or forgivable loans totaling $177,300.51 to various businesses, while denying grants or forgivable loans to eighteen other companies. Id. at 2. He questions why LISC does "not want to explain to the Court what it has done with the remaining $3.122,699.49 [sic] given to it by the Wisconsin Department of Administration." Id. The plaintiff pasted into his brief what appears to be a promotional email from LISC dated October 17, 2023, advertising working capital loans from its "nonprofit partner, Accion Opportunity Fund." Id. at 2–3. The plaintiff also attached an email dated May 19, 2023, which he asserts is LISC denying him a small business grant. Id. at 3. He argues that "LISC has repeatedly denied the Petitioner Vega a Grant," but provides no information about these other denials. Id.

The plaintiff argues that MEDC never told him that it had "COVID-19 Pandemic Financial Assistance" funds, "whether in Summer 2020 or beyond including Summer 2021 or Summer 2022, or during the actual conversation with the two intrusive MEDC staffers." Id. He argues that MEDC "refused to provide a loan anywhere . . . that would have assisted [Vega Global Advisors] in

12

many different forms." Id. at 4. The plaintiff pasted into the brief excerpts from what appear to be new articles about MEDC receiving federal funds to provide financial assistance to businesses in Milwaukee impacted by COVID-19. Id. The plaintiff includes an article describing the history of the ECOA, specifically as it relates to women gaining control of their own finances. Id. at 4–6.

The plaintiff attached two copies of a Diverse Business Assistance Grant Program Agreement between LISC and the Wisconsin Department of Administration, dkt. no. 47-1 at 1–46, a Diverse Business Investment Grant Agreement between MEDC and the Wisconsin Department of Administration, id. at 47–80, a list of businesses titled "LISC Grants Awarded," id. at 81, and a list of businesses titled "Grants Denied LISC," id. at 82.

D.    LISC's Reply (Dkt. No. 50)

LISC replies that the plaintiff has presented multiple irrelevant facts in his response and has failed to show that his amended complaint states a claim. Dkt. No. 50 at 1. It argues that the plaintiff has not identified any specific statements that discouraged him from applying for credit or statements that constitute race discrimination under the ECOA. Id. at 2.

LISC asserts that even if the court were to consider the exhibits the plaintiff filed, those exhibits are irrelevant to his claim. Id. LISC states that the Diverse Business Assistance agreement "relates to an LISC program that provided training and other technical assistance to low- and moderate-income individuals and businesses." Id. at 3. LISC argues that because this program did not provide loans or grants, it is irrelevant to the plaintiff's claims. Id. LISC

13

also argues that the agreement is dated May 19, 2023, which is more than seven months after the alleged discrimination occurred. Id. LISC states that the second agreement also post-dates the plaintiff's claim because it was signed on March 7, 2023. Id. LISC argues that the agreement's scope of work reflects that it was intended to aid economically disadvantaged individuals and businesses under the American Rescue Plan Act of 2021. Id. at 4–5. LISC argues that because the program was a credit assistance program designated for a specific purpose, it cannot form the basis of an ECOA discrimination claim. Id. at 5 (citing 15 U.S.C. §1691(c)). LISC contends that the lists of grant applicants are irrelevant because both are dated October 24, 2023, over a year after the plaintiff allegedly was denied credit. Id.

Turning to the emails pasted into the plaintiff's response, LISC argues that they are irrelevant because they post-date the September 2022 conversation during which LISC allegedly denied the plaintiff credit. Id. at 5–6. LISC argues that the plaintiff has not connected the emails to his claim that allegedly arose months earlier. Id. at 6. LISC argues that even if he had, the denial email reflects that LISC denied the plaintiff a grant, not a loan. Id. LISC asserts that the plaintiff cannot show that the denial of a grant can form the basis of an ECOA claim. Id. LISC argues that none of the plaintiff's extra documents and information establish that it denied the plaintiff credit because of his race. Id.

MEDC did not file a reply in support of its motion to dismiss the amended complaint.

14

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to assert by motion that the complaint fails to state a claim upon which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)). A complaint need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, the court takes "all of the factual allegations in the complaint as true," Id. and draws all reasonable inferences in the plaintiff's favor, Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016).

### IV. Analysis

The amended complaint alleges several times that the defendants denied credit to "Vega Global Advisors." Vega Global Advisors is not a party to this lawsuit. The plaintiff is Pablito Vega—an individual.

Even if Vega Global Advisors was a party to this lawsuit, the plaintiff has not provided enough information to allow the court to determine whether he has the authority to litigate on Vega Global Advisors' behalf. The plaintiff does

15

not explain the corporate structure of Vega Global Advisors—whether it is a sole proprietorship, a limited partnership, a limited liability company or some form of corporation. The structure matters. "A sole proprietorship may litigate pro se, because it has no legal identity separate from the proprietor himself. But a partnership may not . . . ." United States v. Hagerman, 545 F.3d 579, 581 (7th Cir. 2008) (citations omitted). "[A] limited liability company, like a corporation, cannot litigate pro se or be represented in the litigation by a nonlawyer." 1756 W. Lake St. LLC v. Am. Chartered Bank, 787 F.3d 383, 385 (7th Cir. 2015). See also, Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."). "This rule applies even if the corporation is owned by only a few closely related individuals or by a single person who seeks to appear on behalf of the corporation." United States v. Certain Real Prop., 381 F. Supp. 3d 1007, 1008 (E.D. Wis. 2018). The Seventh Circuit Court of Appeals has explained that "the right to conduct business in a form that confers privileges, such as the limited personal liability of the owners for tort or contract claims against the business, carries with it obligations, one of which is to hire a lawyer if you want to sue or defend on behalf of the entity." United States v. Hagerman, 545 F.3d 579, 581–82 (7th Cir. 2008). If Vega Global Advisors is anything other than a sole proprietorship, the plaintiff may not represent it in court.

16

But because the plaintiff is not a lawyer and does not have a lawyer representing him, and because neither defendant raised this issue in the briefing, the court will construe the plaintiff's allegations liberally and read the amended complaint as alleging that the plaintiff himself was denied access to credit.

As best as the court can determine, the plaintiff is alleging that the defendants discouraged him from making or pursuing a grant or loan application in violation of the ECOA because he is "a White European Male not from the Midwest but from Europe" and has an "accent or tone of voice" that is "not Kosher to any of the Midwest accents." Dkt. No. 35 at 3. That sounds like a discrimination claim.

To state a claim for discrimination in violation of the ECOA, a plaintiff must demonstrate that "[he] was an 'applicant' and that the defendants treated [him] less favorably because of" his membership in a protected class. Est. of Davis v. Wells Fargo Bank, 633 F.3d 529, 538 (7th Cir. 2011); 15 U.S.C. §1691(a)(1)-(3). Protected classes include "race, color, religion, national origin, sex or marital status, or age" as well as any applicant that derives income "from any public assistance program." 15 U.S.C. §1691(a)(1)-(3). The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. §1691a(a). But the Seventh Circuit has held that a creditor also can violate the ECOA when it discourages "prospective

17

applicants" from applying for credit. <u>Consumer Fin. Prot. Bureau v. Townstone</u> <u>Fin., Inc.</u>, 107 F.4th 768, 775-76 (7th Cir. 2024) (citing 12 C.F.R. §202.4(b)). Regulation B—the federal regulation that the <u>Townstone</u> court relied on in its holding—defines "discouragement" as "mak[ing] any oral or written statement, in advertising or otherwise . . . that would discourage on a prohibited basis a reasonable person from making or pursuing an application." 12 C.F.R. §202.4(b).

The <u>Townstone</u> opinion provides little guidance on who may be considered a "prospective applicant" for credit. The plaintiff alleges that he contacted MEDC and LISC to see if there were grants or forgivable loans available to him. The court will assume for the purposes of ruling on these motions—without deciding the issue—that the plaintiff's stated intent to apply for a loan is sufficient to allege that he is a prospective applicant.

The plaintiff alleges that his "entire conversation" with Matt Melendes is an oral statement that discouraged him from applying for credit. Although his response brief does not discuss his conversation with MEDC's employees, the court reads the amended complaint as alleging that the conversations the plaintiff had with Beth and Diane discouraged him from applying for credit from MEDC. In both instances, the defendants' employees denied having loans available for which the plaintiff would qualify. Construing those allegations liberally, one can assume that being told there are no loans available would likely discourage a reasonable person from applying for credit. But it is not enough to be a prospective applicant who is discouraged from applying for

18

credit. The discouragement must be *based on a prohibited basis*. Put differently, the defendants must have discouraged the plaintiff from applying for credit because of his "race, color, religion, national origin, sex or marital status, or age." <u>See</u> 15 U.S.C. §1691(a)(1).

The amended complaint lacks any factual allegations supporting the plaintiff's bare assertion that the defendants discriminated against him because of his race, ethnicity or national origin. It alleges that the plaintiff spoke to MEDC employees over the phone; as the court stated in its prior order, the court cannot infer from that allegation that MEDC knew the plaintiff was a "White European Male." Dkt. No. 34 at 38. <u>See</u> <u>Swanson v. PNC Bank, Nat'l Ass'n</u>, Case No. 21-2930, 2022 WL 989361, at *2 (7th Cir. Apr. 1, 2022) (affirming motion to dismiss because plaintiff failed to allege that defendant knew she was member of protected class when it denied her credit application). The plaintiff tries to plead around this problem by alleging that his "accent or tone of voice" was "not Kosher to any of the Midwest accents," apparently implying that a listener would know he was a "White European Male" based on his accent or tone of voice. This argument is without merit The plaintiff assumes that because his accent is "not Kosher"—whatever that means—a listener *must* know he is a "White European Male." Even assuming that there are "Kosher" Midwest accents, it does not follow that MEDC inferred that the plaintiff was a "White European Male" due to the absence of such an accent. MEDC could have believed that the plaintiff was from a non-Midwestern state without believing he was a "White European Male." The court cannot infer from

19

the plaintiff's allegations that MEDC knew the plaintiff's race, ethnicity or national origin, so the amended complaint fails to state a claim for discrimination under the ECOA. The court will dismiss the complaint as to MEDC.

The amended complaint alleges that the plaintiff spoke with an LISC employee via video call, so the court can infer that LISC was aware of the plaintiff's appearance. But the plaintiff does not describe himself or explain what his appearance might have revealed about his race, ethnicity or national origin. And the amended complaint fails to establish that LISC discriminated against the plaintiff on a prohibited basis. The ECOA implementing regulations define "discriminat[ing] against an applicant" as "treat[ing] an applicant less favorably than other applicants." 12 C.F.R. §§202.2(n), 1002.2(n). The plaintiff has not pled any facts to support an inference that he was treated less favorably than other applicants outside of his protected class. The complaint does not identify anyone of any other race or ethnicity who received the grant or forgivable loan for which the plaintiff alleges he attempted to apply. Walton v. First Merchants Bank, 772 F. App'x 349, 351 (7th Cir. 2019) (bare allegation that "white customers were not mistreated" was insufficient to establish race discrimination under the ECOA). The plaintiff's vague allegations about other businesses that may have received funds from LISC are not sufficient to establish that he was treated less favorably because of his race, ethnicity or national origin. The court will dismiss the complaint as to LISC.

Because the amended complaint does not state a claim for discrimination under the ECOA, the court need not reach the defendants' argument that the plaintiff cannot state a claim for discrimination under the ECOA because the DBIP is a credit assistance program.

The court is dismissing the amended complaint because it does not state a claim for discrimination under the ECOA. Both defendants ask the court to dismiss the amended complaint with prejudice and without leave to amend. The court has given the plaintiff one chance to amend his complaint to try to state a claim. He has failed to do so. The court need not grant a plaintiff further leave to amend "when 'it is certain' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion, 786 F.3d at, 519–20). The amended complaint contains many of the same deficiencies as the original complaint—namely that there are no factual allegations supporting an inference that the defendants discriminated against the plaintiff based on his race, ethnicity or national origin. Based on the plaintiff's filings, the court concludes that there is no set of facts the plaintiff could plead that would state a claim for discrimination under the ECOA. The court will not give the plaintiff another opportunity to amend because further amendment would be futile. The court will dismiss this case with prejudice.

## V.    Conclusion

The court **GRANTS** defendant MEDC's motion to dismiss. Dkt. No. 36.

The court **GRANTS** defendant LISC's motion to dismiss. Dkt. No. 41.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**.

The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of September, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**